**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 25-cv-08165 |

## COMPLAINT

Plaintiff Mattel, Inc. ("Mattel" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Mattel's federally registered trademarks the "Counterfeit Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Mattel substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Mattel to combat e-commerce store operators who trade upon Mattel's reputation and goodwill by offering for sale and/or selling Counterfeit Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Mattel is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Mattel has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.　　Mattel, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 333 Continental Boulevard, El Segundo, CA 90245.

5.　　Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys and games under its iconic brands, including, but not limited to: UNO, Barbie, Thomas & Friends, Hot Wheels, American Girl, and Fisher-Price.

6.　　Mattel sells its products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon, and many others.

7.　　One of the most popular Mattel brands is UNO, a multi-player card game. Mattel sells a variety of card games under the UNO brand, including the classic UNO game, UNO Attack!, UNO Flip!, UNO Dare!, and several themed cards decks (the "UNO Products"). The classic UNO card game is a game where players begin with seven cards and take turns matching a card in their hand with the current card shown on top of the deck either by color or number. When a player is down to one card, the player must shout "UNO!" to the other players. The first player to rid themselves of all the cards in their hand wins the game.

8.　　The UNO game was invented in 1971 by Merle Robbins, a barber shop owner from Ohio. Merle Robbins subsequently sold the rights to Robert Tezak who formed International Games, Inc. in order to market and sell the game to the public. In 1992, International Games, Inc. became a part of the Mattel family of companies. Through this acquisition, Mattel gained

3

significant common law trademark and other rights in the UNO trademarks through its predecessor's use, advertising, and promotion.

9.     Sales of UNO Products have generated millions of dollars in revenue for Mattel. UNO has been an enormously popular and iconic game for years, driven by the consumers and word-of-mouth buzz that its consumers have generated.  Among the purchasing public, genuine UNO Products are instantly recognizable as such.  The UNO brand has been a global success that resonates with children and adults worldwide, making UNO Products one of the most recognizable card games around the world.  In 2017, UNO was officially branded the #1 selling card game in the world and inducted into the National Toy Hall of Fame in 2018.

10.     In 2021, UNO celebrated its 50th anniversary with a yearlong lineup of products, partnerships, and celebratory events, including the UNO Championship Series.  Over 2 million fans played more than 28 million games on the UNO! Mobile application for a chance to participate in the UNO Championship Series held in Las Vegas, Nevada, and streamed worldwide.

11.      The UNO Trademarks and the UNO brand have received significant unsolicited media coverage for many years, including, for example, in national and international publications such as Vogue, The New York Times, CNN, The Washington Post, USA Today, CTV News, Parade, and Business Insider, as well as in numerous national television programs and online publications and websites, like Yahoo Finance.

12.     The UNO trademark was first used in 1971, and products have continuously been sold under the UNO trademark and other trademarks (collectively, the "UNO Trademarks").  As a result of this long-standing use by Mattel, strong common law trademark rights and goodwill have amassed in the UNO Trademarks.  The UNO Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

4

| Registration No. | Trademark |
|---|---|
| 1,005,397<br>6,768,790<br>6,950,853<br>7,170,597<br>7,157,749<br>7,391,897 | UNO |
| 2,444,828 | UNO ATTACK! |
| 4,905,606 | UNO DARE! |
| 6,996,857 | UNO EMOJI |
| 6,304,382 | UNO FLIP |
| 7,160,876 | UNO MINIMALISTA |
| 3,704,447 | UNO MOO! |
| 7,476,269 | UNO QUATRO |
| 7,743,039 | UNO SHOW 'EM NO MERCY |
| 3,262,851 | UNO SPIN |
| 4,890,398 | UNO SPLASH |
| 2,402,507<br>5,618,477 | DOS |

13.    The above U.S. registrations for the UNO Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the UNO Trademarks constitute *prima facie* evidence of their validity and of Mattel's exclusive right to use the UNO Trademarks pursuant to 15 U.S.C. § 1057(b).  Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the UNO Trademarks are conclusive evidence of the validity of Mattel's UNO Trademarks and of the registrations of the UNO Trademarks, of Mattel's ownership of the UNO Trademarks, and of Mattel's exclusive right to use the UNO Trademarks in commerce.  15 U.S.C. §§ 1115(b), 1065.  True and correct copies of the United States Registration Certificates for the above-listed UNO Trademarks are attached hereto as **Exhibit 1**.

14.    The UNO Trademarks are distinctive when applied to UNO Products, signifying to the purchaser that the products come from Mattel and are manufactured to Mattel's quality

5

standards. Mattel ensures that products bearing the UNO Trademarks are manufactured to the highest quality standards.

15. The UNO Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of the UNO Products have enabled the UNO brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the UNO brand have made the UNO Trademarks valuable assets of Mattel.

16. Mattel is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products. Mattel has expended substantial time, money, and other resources in advertising and promoting the UNO Trademarks. In fact, Mattel has expended millions of dollars in advertising, promoting, and marketing featuring the UNO Trademarks. UNO Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the UNO Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Mattel. UNO Products have become among the most popular of their kind in the U.S. and the world. The UNO Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the UNO Trademarks is of incalculable and inestimable value to Mattel.

17. UNO Products are distributed and sold to consumers through authorized retail channels throughout the United States, including through authorized retailers in Illinois.

**The Defendants**

18.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Mattel.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Mattel to discover Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, Mattel will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the UNO brand has resulted in significant counterfeiting of the UNO Trademarks.  Consequently, Mattel has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Mattel has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as PayPal, Amazon, eBay, Alibaba, Walmart, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.  At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per

7

year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

21. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

22. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] *Id.* at p. 22.

[6] *Id.* at p. 39.

[7] Chow, supra note 4, at p. 186-87.

U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

23.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores (including product detail pages) operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Mattel has not licensed or authorized Defendants to use any of the UNO Trademarks, and none of the Defendants are authorized retailers of UNO Products.

24.     Many Defendants also deceive unknowing consumers by using the UNO Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for UNO Products.  Other e-commerce stores operating under the Seller Aliases omit using the UNO Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for UNO Products.

25.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27.     Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

28.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Mattel's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Mattel.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

30.     Upon information and belief, Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Mattel, have knowingly and willfully used and continue to use the UNO Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

31.     Defendants' unauthorized use of the UNO Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Mattel.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32.     Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered UNO Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The UNO Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from UNO Products offered, sold, or marketed under the UNO Trademarks.

34.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the UNO Trademarks without Mattel's permission.

35.     Mattel is the exclusive owner of the UNO Trademarks.  Mattel's United States Registrations for the UNO Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of Mattel's rights in the UNO Trademarks and are willfully infringing and intentionally using counterfeit versions of the UNO Trademarks.  Defendants' willful, intentional, and unauthorized use of the UNO Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

36.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37.     Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the UNO Trademarks.

38.     The injuries and damages sustained by Mattel have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

39.     Mattel hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Mattel or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Mattel.

41.     By using the UNO Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

42.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43.     Mattel has no adequate remedy at law and, if Defendants' actions are not enjoined, Mattel will continue to suffer irreparable harm to its reputation and the goodwill of the UNO brand.

**PRAYER FOR RELIEF**

WHEREFORE, Mattel prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the UNO Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine UNO Product or is not authorized by Mattel to be sold in connection with the UNO Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UNO Product or any other product produced by Mattel, that is not Mattel's or not produced under the authorization, control, or supervision of Mattel and approved by Mattel for sale under the UNO Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Mattel, or are sponsored by, approved by, or otherwise connected with Mattel;

    d.  further infringing the UNO Trademarks and damaging Mattel's goodwill; and

    e.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Mattel, nor authorized by Mattel to be sold or offered for sale, and which bear any of Mattel's trademarks, including the UNO Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Mattel's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Alibaba, Walmart, and Temu, (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the UNO Trademarks;

3) That Defendants account for and pay to Mattel all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the UNO Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Mattel be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the UNO Trademarks;

5) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of July 2025.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
habes@gbc.law

*Counsel for Plaintiff Mattel, Inc.*

15